J-S67035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANDREW JOSHUA BAUMGARDNER | : | |
| | : | |
| Appellant | : | No. 1222 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 13, 2019
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0000378-2018

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 24, 2019**

Appellant Andrew Joshua Baumgardner appeals from the judgment of sentence entered in the Court of Common Pleas of Franklin County on March 13, 2019, after he was convicted of Forgery and related offenses following a non-jury trial.  We affirm.

The trial court detailed the relevant procedural history and provided a thorough summary of the testimony herein as follows:

> After a trial without jury, this court convicted [Appellant] of: Count 1 - Forgery (F3)[2]; Count 2 - Conspiracy to Commit Forgery (F3)[3]; Count 3 - Access Device Fraud (F3)[4] ; Count 4 - Conspiracy to Commit Access Device Fraud (F3)[5] ; Count 5 - Conspiracy to Commit Identity Theft (F2)[6]; Count 6 – Receiving Stolen Property (M1)[7]; Count 7 - Forgery (F3)[8]; and Count 8 - Identity Theft (F2).[9] *See Verdict,* January 22, 2019. This court scheduled sentencing, directed the preparation and submission of a presentence report (PSI), and granted counsel leave to file sentencing memoranda prior to sentencing. *See Order,* January 22, 2019.

---

[*] Former Justice specially assigned to the Superior Court.

Sentencing occurred on March 13, 2019. After consideration of the PSI, the parties' memoranda, the oral arguments and statements of the parties, and the evidence at trial, this court imposed the following[10] sentences:

| | | |
|---|---|---|
| Count 8 - Identity Theft | | 30 - 120 months SCI |
| Count 5 - Conspiracy- Identity Theft | | 30 - 120 months SCI |
| Count 7 - Forgery 16 - | | 32 months SCI |
| Count 1 - Forgery 16 - | | 32 months SCI |
| Count 3 - Access Device Fraud 18 - | | 60 months SCI |

The aggregate sentence[11] was not less than 110 months to not more than 364 months in the state correctional institute.

On March 22, 2019, [Appellant] filed a timely Post *Sentence Motion.* Therein, he raised the following claims: 1) insufficient evidence to support convictions for two forgeries; 2) the sentences were excessive; 3) evidence presented "was insufficient to support the verdicts"; and 4) the verdicts were against the weight of the evidence. *See Post Sentence Motion,* ¶¶ 4 - 8. The court directed a response from the Commonwealth, the preparation of transcripts from trial and sentencing, and granted the parties leave to file briefs on the issues. *See Order,* March 25, 2019.

The Commonwealth filed its *Answer* on April 3, 2019. The *Transcript of Proceedings of Sentencing Hearing (Tr.Sentencing),* March 13, 2019, was filed on April 10, 2019. [Appellant] filed his *Memorandum of Law in Support of Defendant's* Post Sentence Motion on April 22, 2019. The *Transcript of Proceedings of TrialWithout- Jury* (Tr.) was filed April 23, 2019. The Commonwealth did not file a brief.

On June 10, 2019, this court issued an *Order* denying [Appellant's] *Post Sentence Motion.* [Appellant] filed the instant timely appeal on July 5, 2019. *See Notice of Appeal,* July 5, 2019. This court directed [Appellant] to file a concise statement of matters complained of on appeal. *See Order,* July 8, 2019. The [Appellant] timely complied on July 29, 2019.

\*\*\*

The Commonwealth first presented the testimony of Joshua Fries. *Tr.,* p. 6. Mr. Fries is the store manager for Rutter's here in the Borough of Chambersburg, Franklin County. *Tr.,* p. 7. Mr. Fries is also the custodian of the records for the Rutter's store in question. *Tr.,* p. 7.

Mr. Fries testified that, according to the records[12] of Rutter's, a purchase was made on December 8, 2017, in the amount of $166.72; the items purchased included "a bacon-

wrapped cheese dog, a large mozzarella stick and two cartons of Newport l00s." *Tr.,* p. 9. The purchase was made using a Visa credit card with the last four numbers "6559." *Id; see also* Commonwealth's Exhibit 4. Mr. Fries also confirmed that he had turned over store surveillance recordings at the request of the police during the subsequent investigation of this credit card transaction. *Id.*

Christie Edwards testified next for the Commonwealth. *Tr.,* p. 11. She is one of the owners of Abe's Towing and a custodian of its records. *Tr.,* pp. 11 - 12. Ms. Edwards testified that on December 8, 2017, Abe's Towing towed a vehicle to their shop from the Red Carpet Inn. *Tr.,* p. 13. Abe's Towing replaced a tire on the vehicle at a cost of $172.18. *Tr.,* p. 13; *see also* Commonwealth's Exhibit 2a.

Ms. Edwards testified that the bill was paid by credit card that was provided to them by phone. *Tr.,* p. 14; see *also* Commonwealth's Exhibit 2b. The credit card used was a Visa with the last four digits 6559. *See* Commonwealth's Exhibit 2B. The signature of the person who signed the receipt is illegible. *Tr.,* p. 15; see *also* Commonwealth's Exhibit 2b.

The Commonwealth next called Randy Plotner to testify. *Tr,* p. 17. Mr. Plotner is the store manager for the Turkey Hill store in Waynesboro, Franklin County. *Tr.,* p. 18. He is also the custodian of that store's business records. *Tr.,* p. 18. Mr. Plotner testified that, according to the Turkey Hill records, a purchase of gasoline was made on November 27, 2017,[13] in the amount of $28.50; the purchase was by a Visa credit card with the last four numbers 6559, in the name of Shirley A. Zeigler. *Tr.,* p. 20; see *also* Commonwealth's Exhibit 3a.

Mr. Plotner also testified that a purchase of gasoline was made at the Turkey Hill store on December 1, 2017,[14] in the amount of $34.55. *Tr.,* pp. 24-25. This purchase was by Visa credit card with the last four numbers 6559, in the name of Shirley Zeigler. *Tr.,* p. 21; see *also* Commonwealth's Exhibits 3b. Mr. Plotner turned over store surveillance video/ pictures to the police in furtherance of the subsequent investigation. *Tr.,* p. 21;. see *also* Commonwealth's Exhibits 6a & 6b.

Shirley Zeigler next testified for the Commonwealth. *Tr.,* p. 27. She testified that [Appellant] rented an apartment from her. *Id.* At the time of her testimony, Ms. Zeigler was 81 years of age.[15] *Id.*

Ms. Zeigler rented an upstairs apartment to [Appellant] in 2017. *Tr.,* pp. 27-28. Ms. Zeigler lived in the downstairs apartment. *Tr.,* p. 28. She never gave [Appellant] or Caitlin

Griffith, the co-defendant, permission to use her credit card. *Tr.,* pp. 28 - 29. She did not make any of the purchases previously testified to by the other witnesses. *Tr.,* p. 29. She also did not generally lock her apartment door, which was accessible to [Appellant] and the co-defendant by a shared entry way. *Tr.,* p. 30.

Corporal Shawn Adolini of the Waynesboro Police Department also testified. *Tr.,* p. 31. On December 22, 2017, he executed a search warrant on [Appellant's] apartment. *Tr.,* p. 32. The police were searching for documents related to Ms. Zeigler, as a result of the investigation leading to the instant charges. *Tr.,* p. 32.

Upon searching [Appellant's] apartment, police recovered: 1) trash bags with mail addressed to Ms. Zeigler[16]; 2) a book of unused checks for Ms. Zeigler's checking account[17]; 3) several checks belonging to Ms. Zeigler, written to various payees, including the co-defendant, Ms. Griffith[18]; 4) and numerous credit cards, membership cards, canceled driver's license, checks, etc., in the name of Ms. Zeigler.[19] *Tr.,* pp. 34-41. All these items were located within the apartment shared by [Appellant] and the codefendant, Ms. Griffith. *Tr.*, p. 37.

The co-defendant, Caitlin Griffith, testified next for the Commonwealth. *Tr.,* p. 41. [Appellant] is the father of her child. *Tr.,* p. 42. She testified that she was charged with offenses related to the charges against [Appellant]; she agreed to cooperate with the Commonwealth in exchange for an agreed upon disposition of the charges against her. *Tr.,* pp. 42 - 44.

Ms. Griffith confirmed that she and [Appellant] were residing together in late 2017 in the upper floor apartment of Ms. Zeigler's home. *Tr.,* p. 44. Around that time, Ms. Griffith observed that [Appellant] was in possession of Ms. Zeigler's wallet and checkbook. *Tr.,* p. 45. She testified that they "went down into [Ms. Zeigler's] apartment and talked to her and then he had [the wallet and checkbook]." *Tr.,* p. 45.

Although Ms. Griffith could not recall exactly what items [Appellant] stole from Ms. Zeigler, she did recall that they began "using the stuff." *Tr.,* p. 45. Together, they purchased gas from the Turkey Hill store on November 27, 2017; she acknowledge[d] that she did not have Ms. Zeigler's permission to use the credit card and [Appellant] also knew he was not authorized. *Tr.,* pp. 45 -46.

She confirmed they used the card again to purchase gas at Turkey Hill on December 1, 201 7, that they both intended to use it, and they had a plan to use it. *Tr.,* p. 46. In addition to the gas

purchases, Ms. Griffith testified that she, with [Appellant's] knowledge, booked a hotel room at the Red Carpet Inn using Ms. Zeigler's credit card. *Tr.,* pp. 46 - 47; see *also* Commonwealth's Exhibits 5a & 5b.

In regards to the car repairs at Abe's Towing, Ms. Griffith testified that it was her vehicle that was repaired. *Tr.,* p. 50. However, [Appellant] signed the credit card receipt. *Tr.,* p. 51. She confirmed that the surveillance photos displayed her and [Appellant] at the Turkey Hill store; however, she could not remember going to the Rutter's store. *Tr.,* pp. 51 - 52. Even though she could not remember going to the Rutter's store, Ms. Griffith testified that both she and [Appellant] smoked Newport cigarettes. *Tr.,* p. 52. Finally, Ms. Griffith reviewed the photos taken during the execution of the search warrant; she confirmed that the items depicted in Ms. Zeigler's name were stolen by [Appellant]. *Tr.,* p. 60.

The final witness[20] of the trial was Officer Kelly Rogers from the Waynesboro Police Department. *Tr.,* p. 64. Officer Rogers detailed his investigation of Ms. Zeigler's initial complaint and gathering of certain pieces of evidence. *Tr.,* pp. 64 - 71. Of note, Officer Rogers testified to the contents of an intercepted phone call between [Appellant] and his mother; this call occurred after [Appellant] had been arrested for these offenses. p. 70. Specifically, [Appellant] asked his mother to hide money and bank cards of the victim so Cpl. Adolini would not find them. *Tr.,* p. 70.

---

[2] 18 Pa.C.S. § 4101(a)(2)

[3] 18 Pa.C.S. § 903 (18 Pa.C.S. § 4101(a)(2))

[4] 18 Pa.C.S. § 4106(a)(1)(ii)

[5] 18 Pa.C.S. § 903 (18 Pa.C.S. § 4106(a)(1)(ii)

[6] 18 Pa.C.S. § 903 (18 Pa.C.S. § 4120(a))

[7] 18 Pa.C.S. § 3925(a)

[8] 18 Pa.C.S. § 4101(a)(2)

[9] 18 Pa.C.S. § 4120(a)

[10] Listed in order to be served; all sentences were imposed consecutively.

[11] The Commonwealth conceded Count 2 - Conspiracy - Forgery and Count 4 - Conspiracy - Access Device Fraud merged with Count 5 - Conspiracy - Identity Theft, and that Count 6 - Receiving Stolen Property merged with Count 3 - Access Device Fraud. See Commonwealth's Sentencing Memorandum, filed February 14, 2019, p. 2. Therefore, no sentences were imposed on those counts.

[12] *See* Commonwealth's Exhibit 4.

[13] Mr. Plotner explained that although the purchase actually occurred on November 27, 2017, the record is considered part of the November 26, 2017, business day. Tr., p.20.
[14] November 30, 2017, business day.
[15]Trial occurred on January 22, 2019; therefore, at the time [Appellant] committed these crimes (2017), Ms. Zeigler was over the age of 60.
[16] Commonwealth's Exhibits 1a & 1 b.
[17] Commonwealth's Exhibit 1c
[18] Commonwealth's Exhibit 1d.
[19] Commonwealth's Exhibits 1e - 1n.
[20] [Appellant] did not call any witnesses. Tr., pp. 61 - 64.

Trial Court Opinion, filed 8/20/19, at 1-3; 5-12.

Appellant filed this timely appeal, and both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.[1] In his appellate brief, Appellant presents the following Statement of Questions Involved:

1. Whether the trial court abused its discretion when it sentenced Appellant to an aggregate sentence of 110 to 364 months, which is double the recommended sentence, not commensurate with the offenses, and did not take all sentencing factors into account?
   a. Whether the only apparent reason for the excessive sentences was that the Appellant chose a TWOJ,[2] rather than accept a plea offer.
2. Whether there is any evidence to support a guilty verdict on the second forgery count.

Brief for Appellant at 8 (unnecessary capitalization omitted).

---

[1] On October 7, 2019, the Commonwealth filed a Briefing Letter with this Court wherein it indicated no appellate brief would be forthcoming.
[2] Appellant is referring to a trial without a jury.

Appellant's first claim raises a challenge to the discretionary aspects of his sentence. Challenges to the discretionary aspects of one's sentence do not entitle an appellant to review as of right. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010) (citing ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa.Super. 2000)). Thus, before we may address the merits of such a challenge, we first must consider:

> (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903;
> (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720];
> (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and
> (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id.*** (quoting ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006)).

Appellant has complied with the first three requirements; therefore, we proceed to determine whether he has raised a substantial question.

> Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis.
> * * *
> We have found that a substantial question exists when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.
> We cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists....

> When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits....A Rule 2119(f) statement is inadequate when it contains incantations of statutory provisions and pronouncements of conclusions of law.

*Commonwealth v. Radecki*, 180 A.3d 441, 467–68 (Pa.Super. 2018) (citations, footnote and other punctuation omitted).

Herein, instead of presenting a colorable argument in his Rule 2119(f) Statement that the trial court's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process in support of a substantial question, Appellant sets forth a catchall recitation of numerous undeveloped claims and conclusory pronouncements like those which were disapproved in *Radecki*. For example, Appellant states the aggregate sentence he received was approximately double that which was proposed by the presentence investigation and that four of the five remaining effective sentences were to run consecutively. Brief for Appellant at 11. He also generally posits that the trial court's sentence did not take into account each sentencing factor and consider his rehabilitative needs. *Id*. at 11-12. Finally, Appellant baldly claims his sentence "is contrary to the fundamental norms which underlie the sentencing process and, therefore, appellate review of the sentence is justified." *Id*. at 12.

It is well-settled that this Court does not accept bald assertions of sentencing errors. *See Commonwealth v. Malovich*, 903 A.2d 1247, 1252

(Pa.Super. 2006). In addition, we consistently have recognized that bald excessiveness claims premised on the imposition of consecutive sentences do not raise a substantial question for our review. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa.Super. 2015) (*en banc*) (stating, "[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[ ]"), *appeal denied*, 126 A.3d 1282 (Pa. 2015) *see also Commonwealth v. Bromley*, 862 A.2d 598, 604 (Pa.Super. 2004) (explaining defendant did not raise a substantial question by merely asserting sentence was excessive when he failed to reference any section of Sentencing Code potentially violated by the sentence), *appeal denied*, 881 A.2d 818 (Pa. 2005).

In light of the foregoing, we conclude Appellant has failed to raise a substantial question; however, even if we were to determine that Appellant's discretionary aspects of sentencing challenge raised a substantial question, we still would find that he is not entitled to relief.

Appellant faults the trial court for sentencing him to a sentence which is almost double that which had been proposed by the presentence investigation. It is axiomatic that the trial court remains the final arbiter of the sentence imposed and, therefore, was not bound by the proposed term. As this Court has stated:

> Pennsylvania has a system of indeterminate sentencing, which implicitly adopts the philosophy of individualized sentencing. The trial judge is given broad discretion within this system to determine the proper sentence to impose. We have emphasized

that a trial court must not delegate its sentencing decision to any person or group. Instead, sentencing must result both from a consideration [by the trial judge] of the nature and circumstances of the crime as well as the character of the defendant.

\*\*\*

[I]n the past this Court has emphasized that there is no reason for a probation office to make a sentencing recommendation. However, the fact that this Court does not look with favor upon the probation office recommending sentences does not mean that they are prohibited from doing so. Our central concern is to insure that the trial judge remains the final arbiter of the sentence imposed; the trial judge must not relinquish this responsibility to any other person or group.

*Commonwealth v. Moore*, 583 A.2d 1, 2 (Pa.Super. 1990) (citations and quotation marks omitted).

Although Pennsylvania's sentencing system is individualized, the sentencing court is not required to impose the minimum possible confinement. *Commonwealth v. Moury*, 992 A.2d at 171. Indeed, an appellant is not entitled to a "volume discount" when he or she is sentenced for multiple convictions. *Commonwealth v. Yeomans*, 24 A.3d 1044, 1050 (Pa.Super. 2011).

Moreover, where, as here, the sentencing court had the benefit of a pre-sentence investigation report, we properly may assume the court was aware of the defendant's character and weighed it along with mitigating statutory factors. *See Commonwealth v. Rhoades*, 8 A.3d 912, 919 (Pa.Super. 2010). Nevertheless, the trial court specifically stated that it had reviewed the PSI Investigative Report, along with the parties' presentencing

memoranda, before fashioning its sentence. N.T. Sentencing, 3/13/19, at 2. In addition, the trial court also recited the applicable sentencing guidelines relative to each offense. *Id*. at 7-8. The court went on to inform Appellant that it had "considered the substance of [his] prior criminal history" which began in 2005 and proceeded to recount the same for him. *Id*. at 8-11.

Appellant's claims to the contrary, the trial court did consider the protection of the public, the gravity of his offenses and his rehabilitative needs prior to imposing his sentence. The court heard counsel's argument that Appellant needed drug and alcohol treatment. The court went on to express it found "it somewhat difficult to believe that through all [Appellant's] time in the judicial system, over the last—well, now going on 14 years, [he] had not once been afforded drug and alcohol treatment," and stressed it was Appellant's obligation to seek the help he claimed he needed for his addictions. **Id**. at 9-10. The court also stressed that Appellant had "spent the better part of the last 14 years victimizing this community in one manner or another. Sometimes it involved victimizing individuals. For example the thefts and the simple assault. Sometimes it involved the community at large." **Id**. at 10-11.

Under our standard of review, an abuse of discretion may not be found unless the trial court's decision is "clearly erroneous." ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007) (citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate

review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Id*. (citations and internal quotation marks omitted). Under our deferential standard of review, we discern no abuse of discretion in the trial court's sentence, and we decline to disturb it. Appellant's first claim merits no relief.

Appellant next challenges the sufficiency of the evidence to support the guilty verdict on the "second forgery count." In reviewing a challenge to the sufficiency of the evidence, we employ a well-settled standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) (citation omitted).

In his Concise Statement of Matters Complained of on Appeal, Appellant stated:

> The only evidence of a Forgery committed by [Appellant] was a credit card charge slip from Abe's for towing and repairs to Ms. Griffith's car, purportedly signed by [Appellant[] Ms. Griffith testified that she, not [Appellant], made the motel reservation online and paid online. She also signed the registration sheet.

Concise Statement of Matters Complained of on Appeal, 7/29/19, at 2.

In the scant argument portion of his appellate brief devoted to this claim, Appellant enumerates the specific elements of the crime of Forgery.[3] In the four sentences that follow, Appellant cites to no caselaw to support his claim or otherwise acknowledges the emphasized portion of the crime of Forgery, *see* footnote 3, as a basis of guilt.

---

[3] As Appellant indicated, 18 Pa.C.S.A. § 4101(a) defines Forgery as follows:

> **(a) Offense defined.**--A person is guilty of forgery if, with intent to defraud or injure anyone, **or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone**, the actor:
>
> (1) alters any writing of another without his authority;
>
> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
> (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S.A. § 4101(a)(2) (emphasis added).

Following our review of the record and considering the evidence in a light most favorable to the Commonwealth as the verdict winner, we find the evidence was sufficient to support the trial court's conclusion beyond a reasonable doubt that Appellant acted with the knowledge that he was facilitating a fraud to be perpetrated by his co-defendant for the benefit of both with regard to the Red Carpet Inn reservation. Contrary to Appellant's assertion that Ms. Griffith acted alone when making the room reservation, Ms. Griffith testified that she and Appellant booked the same through Expedia, and Appellant knew they were using Ms. Zeigler's card to pay for the room. N.T. Trial, 1/22/19, at 46-47, 49. Significantly, Appellant stayed with Ms. Griffith at the Red Carpet Inn. *Id*. at 49. Thus, although Ms. Griffith signed the receipt authorizing Ms. Zeigler's credit card to be charged, her actions and those of Appellant were in accordance with a shared knowledge of a criminal plan to forge Ms. Zeigler's name to pay for a room at the Red Carpet Inn room in which they both stayed. Such evidence sufficiently establishes Appellant was well-aware that he and Ms. Griffith were facilitating a fraud upon Ms. Zeigler. As a result, this claim lacks merit.

Judgment of Sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2019

- 14 -